[Civ. No. 21483. First Dist., Div. Three. Apr. 30, 1965.]

HAYWARD UNION HIGH SCHOOL DISTRICT OF ALA-
MEDA COUNTY, Plaintiff and Respondent, v. HAZEL
A. MADRID et al., Defendants and Appellants.

Augustin Donovan, Edises, Grossman & Grogan and Aubrey Grossman for Defendants and Appellants.

J. F. Coakley, District Attorney, and James E. Jefferis, Deputy District Attorney, for Plaintiff and Respondent.

BRAY, J.*—Defendants and cross-complainants Hazel A. Madrid, Joseph P. Cambra, Maria Constance Cambra, Albert M. Cambra, Edith Dolin, Luther Dolin, Eva A. Caramiho, Nora Williams and Mary Robeiro Lewis Pereria, appeal from the "Order Granting Motion to Strike Answer, for Summary Judgment, and for Judgment on Pleadings" filed May 9, 1962, and the two decrees quieting title entered June 21, 1962; from the order dated August 2, 1962, denying motion to set aside the decrees and ordering entry *nunc pro tunc* as of May 14, 1962, of summary judgment and judgment on pleadings in favor of plaintiff and quieting plaintiff's title; and from the judgment entered thereon August 31, 1962, *nunc pro tunc* as of May 14, 1962, and from the order dated November 1, 1962, denying defendants' motion to set aside the order of August 2, 1962, and the judgment of May 28, 1962, which ordered entry of the quiet title decrees.

QUESTIONS PRESENTED

1. Which orders and judgments are appealable?

2. Did Judge Snook have power to order judgment entered on Judge Sherwin's order?

3. Plaintiff's duty (a) to show that it is entitled to judgment on its complaint, (b) to show that there are no triable issues on the cross-complaint.

4. Were the summary judgment and judgment on the pleadings proper?

In 1957, plaintiff filed a quiet title action against Thomas Bartlett Russell, certain designated other defendants, and "all persons." None of the defendants and cross-complainants concerned with this appeal were personally named but appeared under the "all persons" coverage. Said defendants answered and cross-complained and plaintiff filed an answer to the cross-complaint.

On January 17, 1961, the default of defendant Russell, the other defendants named in the complaint and all persons was entered. As the appealing defendants had already answered

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

and cross-complained, the default did not affect them, and in November 1961, upon motion, the issues concerning the appealing defendants were severed from those concerning the defaulting defendants and set for trial.[1]

On December 18, 1961, plaintiff noticed motions for judgment on the pleadings and summary judgment and to strike defendants' answer and cross-complaint. The matter was heard by Judge Sherwin. On April 25 a minute order was entered granting the motions. ■ On May 9, 1962, a formal order was signed by Judge Sherwin striking defendants' answer and dismissing their cross-complaint and also granting the motions for summary judgment and judgment on the pleadings. No formal judgment was entered. Defendants appeal from this order. As it is not appealable (see Code Civ. Proc., § 963), the appeal from it must be dismissed.

Judge Sherwin being no longer in office, plaintiff on May 28, 1962, appeared ex parte before Judge Chamberlain, and a minute order granting plaintiff decrees quieting title was entered that day. On June 20, 1962, Judge Chamberlain signed two decrees quieting title in favor of plaintiff. They were entered June 21. The decrees dealt with different parcels of land. One decree affected the lands conveyed to plaintiff by defendants and their predecessors. The other decree (designated as "decree recorded at reel 612, image 774-5 Official Records Alameda Co.") dealt with lands of Russell et al. in which defendants had no interest. Defendants appealed from both decrees. However, on May 19, 1964, their appeal from the latter decree was dismissed by this court. So the latter decree is not before the court at this time. Defendants moved under section 473, Code of Civil Procedure, for an order setting aside the two decrees. On August 2, 1962, an order signed by Judge Snook, before whom the motion was heard, was filed. [2, 3] This order denied the motion to set aside the decrees, and also ordered the clerk to enter *nunc pro tunc,* as of May 14, 1962, and pursuant to the order of Judge Sherwin, summary judgment and judgment on the pleadings. On August 31, the clerk entered judgment accordingly, *nunc pro tunc* as of May 14. Defendants appeal from both the order and the judgment. The order being an order after final judgment (the decrees of Judge Chamberlain were purportedly final judgments) the order is appealable (Code Civ. Proc., § 963). Obviously, the judgment entered by the clerk is appealable.

---

[1]Hereinafter "defendants" will refer to the appealing defendants, unless otherwise noted.

█ Defendants then moved under Code of Civil Procedure section 473 to set aside Judge Snook's order and the judgments entered thereon. This motion was denied by Judge Kroninger November 1. Defendants appeal from the order of denial. This order being after final judgment is likewise appealable.

Appeals properly before us are:

(1) Judge Chamberlain's June 21 decree quieting title in plaintiff.

(2) Clerk's judgment of August 31 based on Judge Snook's order and entered *nunc pro tunc* as of May 14.

(3) The August 2 order of Judge Snook denying motion under section 473 to set aside the Chamberlain decrees and entering *nunc pro tunc* the May 14 judgments.

(4) Judge Kroninger's denial of defendants' motion to set aside the clerk's judgment of August 31.

From this hodge podge of orders it clearly appears that before the court are two basic matters: 1) the propriety of granting plaintiff judgment on the pleadings and summary judgment striking answer and cross-complaint and quieting plaintiff's title, and 2) if these judgments were properly granted, whether they should have been set aside on grounds permitted by section 473.

*The Judge Chamberlain decrees of June 21.*

█ The decree quieting plaintiff's title against defendants is a default decree, it reciting that no appearance had been made on behalf of any of the defendants. The theory on which the decree is based, as shown in its recitals, is that Judge Sherwin in his April 25 order had granted plaintiff's motion to strike defendants' answer and cross-complaint, and hence defendants no longer were before the court. Although Judge Sherwin's order is not appealable, it is reviewable on the appeal from the decrees based thereon. Judge Sherwin's order was not a final order. To be effective, it was necessary that judgment be entered thereon. This had not been done at the time of the Chamberlain decrees. Hence defendants were not in default and not being in default, the court had no jurisdiction to enter the quiet title decree based upon the theory that defendants had defaulted. The decree is void and must be reversed.

The court erred in denying defendants' motion to set aside the void decree and in ordering entry of judgment to quiet title thereon. The motion was made on the additional valid

ground that defendants had no knowledge that the case was to be treated as uncontested or as a default case.

Judge Snook's order not only denied (erroneously as we have shown) defendants' motion to set aside the Chamberlain decree, but also directed the clerk to enter judgment *nunc pro tunc* pursuant to Judge Sherwin's order. The portion of the order directing entry of judgment on Judge Sherwin's order depends for its validity on the validity of the latter's order granting summary judgment and judgment on the pleadings and striking defendants' answer and cross-complaint.[2]

*The Summary Judgment.*

The rules on summary judgment have been succinctly set forth in the recent case of *Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]: "Numerous decisions have discussed the law of summary judgments, and the rules relating thereto are well settled. The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts."

Plaintiff's complaint was the ordinary quiet title type. In addition to their answer, which was merely a general denial, defendants filed a cross-complaint, and later filed a second amended answer and cross-complaint.[3]

---

[2]Section 437c, Code of Civil Procedure, gives the trial court authority to strike answer and cross-complaint in a summary judgment proceeding.

[3]The reference hereinafter will be to this second answer and cross-complaint.

The cross-complaint alleged that defendants deeded the parcels in question to plaintiff. Parcels 1-7 were deeded in 1946; parcel 8 in 1944. Grantors of parcels 1-7 admitted the deeds were duly accepted by resolutions of the district, though the grantor of parcel 8 denied acceptance by resolution.

Validity of the deeds, however, was disputed on numerous grounds. The allegations of the cross-complaint with respect to these grounds are summarized below:

*First Cause of Action.*

This count applies to five of the eight grantors. It alleges that: in 1946, John Doe, a deputy district attorney, and the board of trustees of the school district represented to the grantors that a condemnation suit had been legally commenced against them; that the land was needed for new buildings and would be so used. In fact, the district knew the condemnation suit was not regularly brought (because the resolution bringing the suit was insufficient in that it was not adopted by a two-thirds vote of the school board) and the district intended to acquire the property only for speculative purposes; that the board knew that the high school would be abandoned and the property sold; that the board knew at all times that the taking of the property was not necessary to any public use in general or the construction of new high school buildings in particular; that the property was not located at the place and in the manner most compatible with the public good and the least private injury; that no building on this site would be consistent with the plans of, or approved by, the county planning commission and the State Board of Education.

To induce the grantors to accept the offer of the district to pay a price for the property to be set by three appraisers, the attorney represented that the district needed the property to build certain new school buildings thereon, and intended to build them; that he was well acquainted with the law applicable to the acquisition of property by a school district; that all requirements of the California statutes prerequisite to the acquiring and use of title by the district and to the expenditures of school funds had been met.

These representations were false and known to the attorney to be false, or at least made in a positive manner not warranted by the information possessed by him, or he had no reasonable grounds for believing them, or he suppressed facts, being bound to disclose them, thereby violating sections 1709, 1710, 1572 and 1573 of the Civil Code.

These representations were repeated by a representative and spokesman of the board at a meeting of the board. Acting in reliance upon the representations and under the threat of the condemnation suit, grantors sold and deeded their land to the district upon an agreement that the latter would drop the condemnation suit. By so doing, grantors were deprived of a valid defense to the condemnation suit. Had they defended that suit, a judgment in their behalf or for a larger sum would have resulted, or they would have been in a better position to assert their right to reversion of title. The fraud allegedly was not discovered until December 1957 when grantors read in the newspaper that the land was to be sold for private use. Thereupon lawyers advised them of details of the misrepresentations. These could not reasonably have been discovered sooner since grantors had a right to assume that all was regular.

Then appear allegations of trust and confidence in the board of trustees as giving rise to confidential relationship and of peculiar susceptibility of defendants to its influence and persuasion not to seek independent advice and breach of that trust, and thereby resulting in harm to defendants. The compensation received for one property was not just compensation, thereby violating California Constitution, article I, section 14. Bare allegations of lack of public purpose at time of acquisition are set forth as constituting ''excess condemnation'' rendering the deeds void.

The deeding of the property was due to a mutual mistake of the parties consisting of (1) belief that all requirements of the California statutes had been complied with; (2) that plaintiff could acquire property without complying with said Education Code sections; (3) that the plaintiff had a two-thirds vote which, under Code of Civil Procedure, section 1241, was conclusive evidence (a) of public necessity, (b) that the proposed improvement was planned or located in the manner most compatible with the greatest public good and the least private injury; (4) that defendants had no defense to the condemnation suit, and that defendants could not possibly obtain a judgment in excess of the amount offered by plaintiff, and (5) that plaintiff was going to use the property for the erection of a high school building or buildings with the necessary high school grounds adjacent thereto. It is then alleged that the school district has publicly announced its intention of abandoning the property for school purposes and selling it for private purposes.

It was the intent of the parties to convey and receive only

such interests as necessary to accomplish the represented public purposes with reversion to grantors upon cessation of public use. Plaintiff failed to comply with the provisions of sections 5961-5964, 6301, 6305, 6306, 18102, 18171, 18172, 18403, 18404 of the Education Code. The expenditure of public funds for profit was illegal because of violation of these sections of the Education Code. Defendants could not reasonably have discovered the fact that the district intended to sell the property earlier because they had a right to assume, and did assume, that the district would not misrepresent its purpose in the condemnation action and that the district would build the school buildings.

*Second Cause of Action.*

The second count adds to the allegations of the first count that Arsino Rodriquez, predecessor in interest of defendant Nora Williams, was mentally incompetent at the time of the agreement and the execution of his deed to plaintiff.

*Third Cause of Action.*

The third count alleges, additionally to the allegations of the first count, that Parcel 2 in the deed from defendant Albert Cambra to plaintiff consists of a right of way for a road which has never been used and is abandoned.

*Fourth Cause of Action.*

This count relates to the conveyance by defendant Mary Robeiro Lewis Pereria and incorporates all of the allegations of the first count. The main difference between this count and the others is that the condemnation action had not been commenced at the time of her deed to plaintiff, thus the reliance on misrepresentations concerning the condemnation action do not apply.

All defendants seek quieting title, reformation and cancellation of deeds, declaratory relief, and damages.

Plaintiff interposed its answer to second amended-cross-complaint in August 1959. This pleading contains numerous denials based upon lack of information or belief, particularly with respect to the fraud and related causes of action. Affirmative allegations were interposed which claimed compliance with all legal provisions in the acquisition of the property. The statute of limitations was also raised against all four causes of action.

*The Motion for Summary Judgment.*

The motion was accompanied by declarations of Guy War-

ren and O. B. Paulsen.[4] Declarations in opposition were filed by Luther Dolin, one of the cross-complainants, and Aubrey Grossman, one of the attorneys for cross-complainants. A summary of those declarations follows:

*Declaration in Support—E. Guy Warren.*

Declarant would testify as a present and past member of the school district board of trustees that the property in question was acquired from defendants; that since acquisition the district ''has used and is now using the parcels for public school purposes'' such as warehouse for the storage of miscellaneous school district. supplies; quonset buildings used for the training and education of regularly enrolled high school students, as well as adults participating in the district's adult school; parking for students and visitors, and until the school year 1955-56, for veterans' education.

*Declaration in Support—O. B. Paulsen.*

Declarant was principal or superintendent of the district during the time of acquisition and personally conducted the negotiations, acting under the board of trustees. He would testify that fee simple title was acquired by deeds (exhibits incorporated) ''as an addition to the Hayward Union High School site;'' the deeds were regularly adopted by the board of trustees (exhibits incorporated), and they were duly filed with the recorder (as appears on exhibits.[5]) Declarant would testify that purchase prices for the parcels were reached by a process mutually agreed to by the parties (excluding one parcel earlier acquired) and founded upon written appraisals of three disinterested appraisers (exhibits incorporated). He would also testify and show by exhibits the continuous use of the land so acquired for educational purposes through 1952.

*Declaration in Opposition—Luther Dolin.*

Declarant declares that he and other members of his family (*viz.* the other grantors) were called to the district attorney's office and conferred with a deputy whose name is unknown. The deputy district attorney advised them the district had filed a condemnation suit, that he was an expert in the law

---

[4]As declarations under penalty are regarded the same as affidavits (see Code Civ. Proc., § 2015.5), ''declarations'' and ''affidavits'' will be used interchangeably herein.

[5]Genuineness of seven of the eight deeds was previously admitted by appellants. Certified copies of the deed to Parcel 8 and the resolution accepting it are attached and incorporated by reference. The other documents attached to the declaration and incorporated therein by reference are not, however, certified or verified.

and was certain they would have no defense to the suit; that since the only question would be the amount of compensation it would be useless to hire an attorney. He also offered the alternative of appraisal and acquisition by deed. Declarant tried to argue with the deputy but to no avail. The same position was reached with the board of trustees in subsequent meetings.

"As a result of the statements made by the deputy and ... the school district which we accepted as true because we did not feel that public officials would lie to us, we acted in accordance with their advice." Subsequently, the grantors passed by the property and saw that it was eventually used for parking and temporary buildings. "We could see that the new buildings that the school district had claimed were going to be built on the property were not built...." "Then in 1957 we saw an announcement in the newspapers that the ... property was being sold to a private party. This seemed strange to us since our property had been taken away from us for high school use and we couldn't see why and how they would turn around and sell it to a private party. We engaged [attorneys] to look into the matter and ... they advised us that there had been misrepresentation and mistake, the details of which is set out in the cross-complaint." This law suit followed.

The required declaration of personal knowledge and ability to testify is lacking.

*Declaration in Opposition—Aubrey Grossman.*

Declarant merely declares he has read various documents and has questioned defendants concerning the deeds and states his conviction that if further deposition of Paulsen were allowed, "Paulsen would testify to facts which would establish that there is an issue of fact in this proceeding and facts which would change the application of legal principles to this case."

On argument before this court, counsel for defendants conceded that this declaration in no manner met the requirements of a declaration on a motion for summary judgment and must be disregarded in whole.

In this respect, the situation is somewhat similar to that in *Burke* v. *Hibernia Bank,* 186 Cal.App.2d 739, 746 [9 Cal.Rptr. 890], where the court said: " 'A witness can testify of those facts only which he knows of his own knowledge....' (Code Civ. Proc., § 1845; 2 Wigmore, Evidence, § 654, p. 757.) Lyle alleges no facts to establish such first-hand knowledge. The

affidavit must realistically be viewed as hearsay; it thus fails to create an issue of fact.'' Therefore, it is unnecessary to detail the testimony which declarant *assumed* Paulsen would give.

*Judge Snook's Order for Entry of Judgment nunc pro tunc.*

As before stated, the propriety of Judge Snook's order for entry of judgment *nunc pro tunc* depends upon the propriety of Judge Sherwin's order granting summary judgment. Thus, Judge Snook could properly order entry of judgment on Judge Sherwin's order if the latter was correctly decided.

Before determining whether the declarations of the parties disclosed any triable issue it is necessary to deal with two preliminary contentions of defendants.

First, defendants contend that because Judge Sherwin, after making his order granting the motion for summary judgment, became ineligible to continue on the bench, no other judge could act in his place and all orders based upon Judge Sherwin's order were void.

Defendants rely for their contention on *Ross* v. *Murphy* (1952) 113 Cal.App.2d 453 [248 P.2d 122], and *Connolly* v. *Ashworth* (1893] 98 Cal. 205 [33 P. 60]. In *Ross,* Judge Parker signed findings of fact and a judgment but died before they were filed. Later, Judge Haas ordered the clerk to file both. The reviewing court held Judge Haas' order void because on his death, Judge Parker's office became vacant and his successor was without power to order the documents filed. In *Connolly,* the judge, after trial, signed a decision but did not file it. Subsequently, his term of office expired. His successor ordered the decision filed and judgment to be entered on it. The Supreme Court held that ''the trial of a cause by the court is not concluded until the decision is filed with the clerk'' and that when the term of office of the judge who tried the case expires, his successor in office may not order an unfiled decision of his predecessor to be filed.

 The situation here is entirely different from that in those cases. Here Judge Sherwin's *filed* order granted the motions. All that was left to be done was for the clerk to perform the ministerial duty of entering the judgment based on the order. When a judgment has been rendered, its entry is a mere ministerial act which may be directed by the court (3 Witkin, Cal. Procedure (1954), pp. 1888, 1889; *Leavitt* v. *Gibson*, 3 Cal.2d 90 [43 P.2d 1091]). Since no findings are required for orders such as made here, the signed order, entered in the minutes constituted rendition

(3 Witkin, Cal. Procedure (1954) p. 1887). Judge Snook had jurisdiction to order judgment on Judge Sherwin's order.

▆▆▆ Second, defendants contend that the summary judgment motion should not have been decided because defendants had not taken Warren's deposition. The record shows that on February 20, 1962, defendants asked for a continuance to finish the deposition of Paulsen and to take Warren's deposition and also to submit interrogatories. The court pointed out that the action had been pending since 1957 and that defendants had filed a memorandum to set almost a year prior to this hearing and yet had done practically nothing towards discovery. The court stated that it would continue the hearing for a week for the purpose of determining what, if any progress had been made toward discovery, at which time the court would either grant a further continuance or submit the matter. The next action occurred on March 16. The court asked what the situation was. Defendants answered that they had completed Paulsens' deposition and that because Attorney Grossman had trials intervening he had noticed Warren's deposition three or four weeks away. The court then asked if defendants had any affidavits to submit as a result of taking Paulsen's deposition. Defendants answered that they had not. The court stated that it would submit the motion. Defendants then asked leave to submit a memorandum on the merits. The court gave defendants 10 days to do so. Defendants did not ask for any further continuance. The order granting the motion was not made until May 9, almost two months later. There was no error in the court's submitting the motion without granting defendants further time for discovery. The motion had been noticed fully a year before it was determined. Apparently defendants were not too eager to perfect discovery.

Finding no procedural error in Judge Snook's order, we may now turn to the question of whether the declarations of the parties on the motion for summary judgment disclosed any triable issue of fact.

*Plaintiff's duty.*

(a) *to show that it is entitled to judgment on its complaint.*

▆▆▆ In both the Paulsen and Warren declarations, the declarant states that the facts therein set forth are within the personal knowledge of the declarant and he can, if sworn as a witness, testify competently thereto. Such statements are a requisite (see *Snider* v. *Snider* (1962) 200 Cal.App.2d 741,

748 [19 Cal.Rptr. 709]). Paulsen's declaration incorporated the deeds by which plaintiff acquired the property (other than Parcel 8) which were on file in the action. (These had been admitted in evidence at the hearing before Judge Chamberlain.) The deed to Parcel 8 was annexed to the declaration. The pleadings had admitted the due execution and delivery of these deeds and the declaration of the defendants conceded the delivery thereof, so no issue as to their execution or delivery could be made.

Paulsen's declaration referred to the negotiations with defendants and incorporated a memorandum agreement signed by defendants Madrid, Albert and Maria Cambra, Luther and Edith Dolin, agreeing to be bound by the appraisals to be made by three disinterested appraisers. The appraisals were incorporated in one declaration. Incorporated, too, was a supplemental agreement signed by the last mentioned defendants, Eva Caramiho, Arsino Rodriquez and Victoria Rodriquez, agreeing to sell their respective parcels to the district for the prices therein set forth.

Warren's affidavit stated that the district, since acquisition of the property, had used and was using the property for public school purposes. Attached to the declaration were maps of the property and the declaration then detailed the structures on it and the uses to which they were put—all being school purposes. Also incorporated in the Paulsen declaration is the resolution of the board providing for the acquisition of the property.

The declarations and the exhibits show plaintiff to be the owner of the property and in possession thereof and using it for school purposes. Thus, only so far as the allegations of the complaint are concerned, they "state facts establishing every element necessary to sustain a judgment in [its] favor" (*Snider* v. *Snider, supra,* p. 748, quoting from *House* v. *Lala,* 180 Cal.App.2d 412, 416 [4 Cal.Rptr. 366]).

(b) *plaintiff's duty to show no triable issues on the cross-complaint.*

It is the position of defendants that until plaintiff shows that there are no triable issues on the matters alleged in their cross-complaint, defendants are not required to file any declarations and may stand upon the allegations of their cross-complaint. They concede that they have not attempted, except in a minor way, to support their cross-complaint, relying entirely upon their contention that summary judgment cannot lie because of the alleged failure of plaintiff's

declarations to deal with the cross-complaint.

Thus the first question confronting this court is whether, where the plaintiff is the moving party and the cross-complaint alleges an affirmative defense, the affidavits filed in support of the motion must negate the affirmative defense. As said in Continuing Education of the Bar, California Civil Procedure Before Trial, chapter 23, page 862 "No California cases have dealt with this problem." The statement is made further that "the conclusion [that the moving party must do so] is inescapable in view of the general statements in the cases cited in the first paragraph of this section that the moving party's affidavits must state facts sufficient to entitle him to judgment." Although the cited cases use this broad language, in none of them is there a situation where the moving party shows that there is no issue presented as to the allegations of his pleading except as such allegations are affected by affirmative matter set up in the opponent's cross-complaint and the opponent has filed no affidavit showing that he can prove the issues raised in his pleading. Actually, a study of the California cases on summary judgment shows a conflict with the principle referred to in the above mentioned article. In *Barry* v. *Rodgers* (1956) 141 Cal.App.2d 340 [296 P.2d 898], the court said "Often there is no genuine issue of fact although such an issue is raised by the formal pleadings." (Pp. 342-343.)

In *Schessler* v. *Keck* (1956) 138 Cal.App.2d 663 [292 P.2d 314], the court stated, quoting from Volume 2, Witkin, California Procedure (1954), section 78, page 1715: "Since the object of the proceeding is to discover *proof,* the adverse party must file an affidavit in opposition to the motion; he cannot rely on a verified pleading alone. [Citations.] And an affidavit which contains no evidentiary statements but merely repeats the general allegations of the pleading is similarly useless. (*Cowan Oil & Ref. Co.* v. *Miley Petroleum Corp.* (1931) 112 Cal.App. Supp. 773, 780 [295 P. 504].)"

In *Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558, 562-563 [277 P.2d 464], the court said: "The obvious purpose to be served by the summary judgment procedure is to expedite litigation by avoiding needless trials. While it is not a substitute for a regular trial and does not authorize the trial of any bona fide issues of fact which the affidavits may reveal, it permits the court to pierce the allegations of the pleadings to ascertain whether a genuine cause of action in fact exists or whether the defense interposed is sham or feigned. (*Kelly*

v. *Liddicoat,* 35 Cal.App.2d 559, 561, 562 [96 P.2d 186].)

"Section 437c, Code of Civil Procedure, provides, *inter alia,* that if it is claimed that an action has no merit the defendant may, upon proper notice, make a motion, supported by an affidavit of any person having knowledge of the facts, that the complaint be dismissed and judgment entered. The plaintiff, however, 'by affidavit or affidavits, shall show ... such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact.' If it appears from an examination of the affidavits that no triable issue of fact exists, and that the affidavits in support of the motion state facts which, if proved, would support a judgment in favor of the moving party, then summary judgment is proper. (*Coyne* v. *Krempels,* 36 Cal.2d 257, 261 [223 P.2d 244].) It is thus apparent that the propriety of granting or denying the motion depends upon the sufficiency of the affidavits that have been filed. [Citations.]

"Since plaintiff failed to file any affidavit in opposition to the affidavit filed on behalf of the defendant, the court was entitled to accept as true the facts therein stated, which were within the personal knowledge of the affiant and to which the affiant could competently testify. [Citations.] Plaintiff urges, however, that the pleadings herein raise particular issues of fact which preclude the granting of a motion for summary judgment. Plaintiff has fallen into the error of relying on her complaint as a means of disputing the affidavit filed on behalf of defendant. The fallacy of this position is demonstrated in *Coyne* v. *Krempels, supra,* and *Hardware Mut. Ins. Co.* v. *Valentine,* 119 Cal.App.2d 125, 129 [259 P.2d 70], which lay down the rule that the failure to file counteraffidavits cannot be remedied by resort to the pleadings. As pointed out in the careful analysis of this question in the Coyne case, the sufficiency of the allegations of a complaint do not determine the motion for a summary judgment. Rather, it must be determined from the affidavits whether there exists a genuine issue as to any material fact. Often there is no genuine issue of fact, although such an issue is raised by the formal pleadings. Absent a genuine issue of fact as disclosed by the affidavits, a party is not entitled to proceed to trial and the court, applying the law to the uncontroverted material facts, may render a summary judgment. The sole question then is, is the defendant entitled to a summary judgment on the basis of the undisputed facts in the affidavit it filed in support of its motion? This question must be answered in the affirmative.''

In an article in 69 Harvard Law Review (1956) 841, the writer, Professor Charles Alan Wright, discussed the federal summary judgment rule (rule 56e) and pointed out the principle intended to be applied. He said: ''The problem is this: After the pleadings in an action have been completed, one of the parties moves for summary judgment. He supports this motion with affidavits and depositions. These show facts that, if believed, entitle the moving party to judgment as a matter of law. Or stated in another fashion, if the only evidence at the trial were to be the evidence produced in support of the motion, a directed verdict for the moving party would be granted. The nonmoving party fails to controvert this evidence with affidavits or depositions of his own. Instead he contents himself with pointing to his pleading, and saying that allegations therein are contrary to the moving party's evidentiary showing. The nonmoving party fails to demonstrate how, if at all, he expects to be able to prove those allegations. On such a state of the record may summary judgment be granted, or is the bare allegation in the pleadings enough to create a 'genuine issue of material fact' and defeat the motion?

''The answer is certainly clear enough on principle. The purpose of summary judgment is to dispose of sham claims and defenses which a party will not be able to prove at the trial. [Footnote omitted.] The very object of such a motion, as a master of our craft said long ago, is 'to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial.' [Footnote omitted.] The history and purpose of the rule were well stated by its principal draftsman in a leading case: . . .''

Professor Wright then states that the third circuit of the federal court, however, has not followed that principle but has adopted a rule, in effect, that the moving party in a motion for summary judgment has the burden to submit proof that the answer is sham and that there is no real defense or issue of fact to be determined and that the opposing party need not be put to a test of his affidavits, if any, unless the moving party makes such showing. New York has adopted a similar principle (see *Roadel Foods, Inc.* v. *Great Western Meat Market Co.* (1962) 34 Misc.2d 802 [231 N.Y.S.2d 711, 713]; *State Bank* v. *Mackstein* (1924) 123 Misc. 416 [205 N.Y.S. 290]; a number of other jurisdictions have adopted similar principles; see 49 C.J.S. 415, Judgments, § 225 and 1964 Supp.).

Reconciling the California cases, we find that the rule in this state is as follows: the party moving for summary judgment must show by affidavit that he is entitled to judgment on the issues raised by his pleading and that the defenses thereto alleged by his opponent are sham and do not raise an issuable defense, and until the moving party makes such a showing his opponent need not be put to a test on his affidavits, if any. However, if the movant does make such showing, then the opponent cannot rely upon the allegations of his pleading but must, apart from such pleading, show by his affidavits he has sufficient proof of the matters alleged to raise an issuable question of fact in regard thereto. This, then, brings us to the determination of whether plaintiff's affidavits contained facts which, if not denied, show that plaintiff is entitled to judgment on its complaint and on defendants' cross-complaint. As we have here stated, plaintiff's affidavits demonstrated that there are no issuable facts to be determined so far as the allegations of plaintiff's complaint are concerned, except as affected by the allegations of the cross-complaint. Our task, therefore, is to determine whether plaintiff has shown that there are no issues of fact to be considered as to the allegations of the cross-complaint.

A comparison of the statements in plaintiff's affidavit with the allegations of the cross-complaint shows that there are allegations which are not met in its affidavits.

The allegations concerning the alleged misrepresentations made by the deputy district attorney are nowhere denied. The cross-complaint alleges, in part, that the deputy district attorney informed defendants (and they acted on such information) that defendants could have no defense to the condemnation action, and could only recover the amount appraised by the district's appraisers. It alleges further that defendants did have defenses to the proceeding, namely, that because the resolution for condemnation was not passed by a two-thirds vote of the board,[6] defendants would be entitled to show and could show in the action: (1) that there was no public necessity for the proposed "public improvement," (2) that the subject property was not necessary therefor, (3) that such proposed public improvement was not located or planned in the manner most compatible with the greatest public good and the least private injury.

As the resolution of condemnation was not passed

---

[6]This fact appears on the resolution, copy of which is attached to one of plaintiff's affidavits.

by a two-thirds vote of the board members, these defenses, if supported would be open to the defendants in the condemnation action (see Code Civ. Proc., § 1241).

The allegations of the cross-complaint as to the statements of the deputy district attorney concerning what could be the issues in the condemnation action were sufficient to establish fraud. (See *Thiriot* v. *Santa Clara etc. School Dist.* (1954) 128 Cal.App.2d 548, 549 [275 P.2d 833].) Plaintiff attempted to negative these allegations merely by showing that since the purpose of the condemnation action was to obtain the property for school purposes it has been used for school purposes. This did not show that there was no issue as to the above mentioned alleged defenses available because the resolution was adopted by less than two-thirds of the board.

The allegation that the deputy and the board represented that the property was needed to build new school buildings thereon and that the board did not intend so to do, and that the properties were being condemned solely for speculative purposes, is met by the declaration of Paulsen that the eminent domain action was brought for the purpose of condemning the property for public school purposes and the declarations of both Paulsen and Warren that immediately upon acquisition the property was and still is used for such purposes. This threw the burden on defendants to show by affidavit that there was a triable issue upon this subject. They could no longer rest on the allegations of their cross-complaint. (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257 [223 P.2d 244]; *Schessler* v. *Keck, supra* (1956) 138 Cal.App.2d 663, 668.)

As to the allegation that the district knew that conditions would require the sale of the property by the district after a few years—that fact could not constitute a defense in the condemnation action. The fact that it was needed for school purposes in the interim would permit the exercise of eminent domain.

It should be pointed out that even if the school district did not build new school buildings as represented this would not constitute fraud. The district had the right to condemn for any school purpose and on acquisition, to change to some other school purpose any time during its ownership of the property. So there could be no cause of action for fraud in this respect. If the district determines that the property is no longer desirable for school

purposes and elects to sell it to the city, it has the right to do so (see *Newport* v. *City of Los Angeles, infra* (1960) 184 Cal.App.2d 229, 239 [7 Cal.Rptr. 497]).

Plaintiff made no attempt to negative alleged noncompliance by the district with the Education Code sections then in effect, prior to the condemnation action. However, a reading of section 18403 (obtaining report of planning commission) and section 18404 (obtaining recommendation of the State Department of Education) as those sections existed in 1946, at the time of the acquisition of the subject property, clearly shows that they applied only to the acquisition of *new* school sites. Both section 18404 and section 18403 read in part—''before acquiring title to property for a *new* school site . . .'' (italics added). The subject property was acquired as an addition to an existing school site.

*Gogerty* v. *Coachella Valley Junior College Dist.* (1962) 57 Cal.2d 727 [21 Cal.Rptr. 806, 371 P.2d 582]; *Los Altos School Dist.* v. *Watson* (1955) 133 Cal.App.2d 447 [284 P.2d 513] and *Watson* v. *Los Altos School Dist.* (1957) 149 Cal. App.2d 768 [308 P.2d 872], cited by defendants, are not in point as they dealt with condemnation proceedings to obtain *new* sites. Hence the failure of the district to comply with those sections would not have given defendants any defense to the condemnation action.

Likewise, the failure of the district to comply with the other sections of the then Education Code as charged in the cross-complaint could not have been raised as a defense in the condemnation action.[7] Sections 5961 (21401), 5962 (21402), 5963 (21403), vest discretionary authority in school boards to accumulate funds for capital outlay purposes and to expend those funds for that purpose or other purposes; sections 6301 (20601), 6305 (20606), 6306 (20651), all relate to the filing of budgets etc. with the county superintendent of schools; sections 18102 (15302), 18171 (15408) and 18172 (15409) relate to the *construction* of school buildings. In a condemnation action the question of how the property, if acquired, is to be paid for is not a relevant matter. If after the judgment of condemnation is obtained, the district does not have the funds with which to pay the amount awarded the property owners, the proceedings must be annulled with certain penalties payable to the property owners (Code Civ. Proc., §§ 1252, 1255a).

---

[7]Most of these sections have been amended. Where amended, their present section numbers are shown in parenthesis.

The agreement signed by Hazel Madrid, Senno and Victoria Rodriquez, Eva A. Caramiho, Albert M., Joseph P. and Maria Constance Cambra, Luther and Edith Dolin, provided that the appraisers to be appointed to appraise the properties would be "three disinterested appraisers." The declaration of O. B. Paulsen states that the appraisers appointed were disinterested. No denial of that fact appears. Moreover, there is no allegation in the cross-complaint other than the bare statement that the compensation received by defendants "was not just compensation," that the properties involved were worth more than the price paid for them at the time of purchase. The showing by plaintiff that the compensation paid for the property was that fixed by three disinterested appraisers in accordance with the agreement, required a countershowing by defendant in order to raise an issue as to the adequacy of the compensation. Defendants failed so to do, so no issue was raised thereon. Defendants could not rely upon the conclusion in their cross-complaint that the compensation was not "just."

Plaintiff made no attempt to meet the allegations of mutual mistakes of fact other than by pointing out that defendants had entered into a sales agreement with the district and had executed deeds to the district. This, of course, is no answer to the charges of mistake. Nor is there any answer to the allegations that it was the intent of both the district and defendants that the conveyances were intended to convey only an easement or a fee simple defeasible.

Plaintiff did not attempt to meet the allegations in the second cause of action that Arsino Rodriquez was known to the district to be, and was, mentally incompetent at the time of the execution of the deed.

As to allegations in the third cause of action that the right of way for a road had not been accepted or used by the district, plaintiff's affidavits show that the property had been accepted and is being used for school purposes. As defendants have not filed any affidavit on this subject, and cannot rely on their cross-complaint to meet the statements in plaintiff's affidavits, there was no issue of fact to be determined under this third cause of action.

Defendants rely upon *Balling* v. *Finch* (1962) 203 Cal.App.2d 413 [21 Cal.Rptr. 490], for their contentions that their cross-complaint sets up a cause of action for duress and that plaintiff's affidavits fail to show no triable issue on this subject. However, no facts alleged in the cross-complaint

meet the definition of duress as stated in that case. Therefore, there could be no issue of duress to be determined. The definition set out in *Balling* (quoting from *Lewis* v. *Fahn*, 113 Cal.App.2d 95, 98-100 [247 P.2d 831]) is:

" '...By many if not most of the modern authorities, however, the true doctrine of duress is held to be that a contract, deed, or any obligation obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property, or of a member of his family, as to deprive him of the free exercise of his will and prevent the meeting of minds necessary to a valid contract, may be avoided on the ground of duress, whether the oppression causing the incompetence to act be produced by what was formerly deemed duress, and relievable at law as such, or wrongful compulsion remediable only by an appeal to a court of equity.

" '. . . . . . . . . . . . . .

" 'There is no legal standard of resistance with which the person acted upon must comply at the peril of being remediless for a wrong done to him, and no general rule as to the sufficiency of facts to produce duress. The question in each case is, Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of the quality of mind essential to the making of a contract, and was the contract thereby obtained? . . . ' " (Pp. 418, 419.) At most, the facts alleged in the cross-complaint constituted misrepresentation and fraud. They did not amount to duress.

Nor is there any issue shown as to a confidential relationship between the deputy district attorney and the school board, and the defendants. Defendants cite no cases holding that such a relationship exists merely because the deputy and the school board are public officials. ▮▮▮ While a property owner may believe in the representations of such officials, the fact that he does so believe does not cause a fiduciary or confidential relationship to arise between them. The fact that defendants are alleged to have reposed confidence in the official does not "establish a confidential relation as known to law" (See *Ruhl* v. *Mott* (1898) 120 Cal. 668, 679 [53 P. 304]; *Robins* v. *Hope* (1881) 57 Cal. 493, 497; *Gosnell* v. *Lloyd* (1932) 215 Cal. 244, 254 [10 P.2d 45]).

There can be no issue under the cross-complaint as to the extent of the interest intended to be conveyed by the deeds. The cross-complaint alleges "Madrid et al, and the School District intended that the deeds should convey the same right,

title and interest in said real property, as would have been transferred by a final judgment in the condemnation suit.'' A fee simple title is precisely the title the district would have received in a condemnation action. ''By the judgment in the condemnation action the entire fee estate in the property ... passed ... where the condemnation vests a fee, the general rule is that the property does not revert to its former owner when it ceases to be used for the purpose for which it was condemned'' (*Arechiga* v. *Housing Authority* (1958) 159 Cal.App.2d 657, 659 [324 P.2d 973]).

 '' 'Property acquired in fee simple by a public body for a particular public purpose may nevertheless be diverted to another use. ... When the judgment in the condemnation case became final plaintiffs were divested of all interest in the property regardless of the purpose for which the property might later be used.' '' (*Newport* v. *City of Los Angeles* (1960) 184 Cal.App.2d 229, 239 [7 Cal.Rptr. 497].)

 ''The law is that where the statute in terms provides for the condemnation of lands for public use, it will be construed to authorize the taking of the fee'' (*Crockett Land & Cattle Co.* v. *American Toll Bridge Co.* (1931) 211 Cal. 361, 364 [295 P. 328]).

As we have shown, the cross-complaint set up a cause of action for fraud and misrepresentation. Therefore, the orders for and judgment on, the pleadings and striking defendants' answer and cross-complaint would be erroneous as were the orders refusing to set them aside.

Thus, it appears that as to certain issues raised by the cross-complaint, plaintiff's affidavits failed to show that they were sham or that there were no triable issues of fact thereon. Therefore, were it not for the question of the application of the statute of limitations, the order granting summary judgment would also be erroneous.

*Statute of Limitations.*

 It clearly appears that any cause of action for relief on the ground of fraud or mistake is barred by Code of Civil Procedure, section 338, subdivision 4, three years after its accrual, except that: ''... The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'' (Code Civ. Proc., § 338, subd. 4.)

The representations were claimed to have been made in late 1945 or early 1946. This action was filed in 1957, more than 11 years thereafter. Defendants make no sufficient attempt

in either their cross-complaint or their affidavits to set forth any facts to avoid application of the statute. Dolin merely states in his declaration that, after seeing the newspaper story, defendants engaged attorneys, who advised them in February of 1958 that there had been misrepresentation and mistake. The cross-complaint merely referred to the newspaper article and the statement that defendants relied upon the representations. No allegation is made that plaintiff did anything to conceal the true facts or prevent defendants from investigating. Nor did they make any effort to find out whether they could have raised any issues or possibly obtained any larger sums in the condemnation suit. For over 11 years they appeared satisfied with the bargain they had made. Applicable here is the following language from *Scafidi* v. *Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 565, 566 [165 P.2d 260]:

''It is also evident from the same facts that the said last-mentioned cause of action had been barred by the statute of limitations for more than eight years before plaintiffs ever took a single step toward making the discovery or asserting it, and that no statement, act or refusal by defendants during said period operated in any degree to prevent its discovery. . . . Our courts have repeatedly affirmed that mere ignorance, not induced by fraud, of the existence of the facts constituting a cause of action on the part of a plaintiff does not prevent the running of the statute of limitations [citations]; and that 'mere ignorance of the facts, . . . without some valid excuse for ignorance was of no consequence.' (*Dennis* v. *Bint*, 122 Cal. 39, 44 [54 P. 378, 68 Am.St.Rep. 17] [citing authority].) Such, only, is the position in which the plaintiffs' complaint places them in this case. The last-cited cases are, in effect, a recognition of the prevailing rule that a failure to discover a cause of action does not, as in the case of its fraudulent concealment, suspend the running of the statute of limitations.'' (Accord *Bank of America* v. *Williams*, 89 Cal.App.2d 21, 25 [200 P.2d 151].)

''The provision tolling operation of the statute until discovery of the fraud has long been treated as an exception and, accordingly, this court has held that if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint. (See *Sublette* v. *Tinney* (1858) 9 Cal. 423; *Lady Washington C. Co.* v. *Wood*, 113 Cal. 482 [45 P. 809]; *Consolidated R. & P. Co.* v. *Scarborough*, 216 Cal. 698

[16 P.2d 268] ; *Knapp* v. *Knapp,* 15 Cal.2d 237, 242 [100 P.2d 759].) Further, although negligence by the person defrauded is not a defense to a promptly brought action based upon intentional misrepresentation (see *Seeger* v. *Odell,* 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]), the cases construing section 338, subdivision 4, *supra,* have held that plaintiff must affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, at p. 437 [159 P.2d 958].) Defendants' only excuse for the delay in asserting their rights is that they relied upon the representations made to them in 1946. Defendant Dolin stated in his declaration:

 "From time to time we passed by the high school and noticed what use was being made of our property. For some substantial time no use of the property was made at all. Later it was used for a parking lot and quonset huts were placed on it. We could see that the new buildings that the school district had claimed were going to be built on the property were not built on the property we had deeded, but we assumed there had been some substantial change in their plans and there was nothing we could do about it." This showed that defendant knew that the alleged representations concerning the use to be made of the property and of the grounds of fraud alleged, were not to be kept. This placed a duty upon them to inquire and to investigate. There were abundant means of knowledge open to defendants. As said in *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 438, 439 [159 P.2d 958] :

"In many cases it has been said that means of knowledge are equivalent to knowledge. [Citations.] This is true, however, only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious. In the Lady Washington case, the court said (113 Cal. at p. 487) that 'as the means of knowledge are equivalent to knowledge, *if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry* which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts.' "

The circumstances which should have aroused the sus-

picions of defendants in the case at bench were not light or small ones. They were such that it was inexcusable for defendants, passing the property from time to time and seeing that it was not being used for the purposes they claim were represented to them, not being put upon inquiry. It wasn't until the property for which they had received a price fixed by three disinterested appraisers had increased greatly in value that they became attentive to the uses made and to be made of the property.

There is no indication in the cross-complaint nor in the declarations that Rodriquez's incompetency continued after the execution of his deed, nor of anything to prevent the application of the three-year statute of limitations (see Code Civ. Proc., § 338, subd. 4). No allegation appears to cause the 20-year period mentioned in Code of Civil Procedure, section 328 to apply.

In the instances where the cross-complaint and defendants' failure to file affidavits failed to disclose triable issues of fact, and in the failure to allege sufficient facts to toll the operation of the statute of limitations, defendants contend that they should have been permitted to amend the cross-complaint or to present such facts. The record fails to disclose any request to do so. A party may not submit motions of the kind here and then when the party receives an adverse decision, contend that he should be given another opportunity when he neither requested it nor showed in the trial court that he had other facts to present.

The appeal from Judge Sherwin's "Order Granting Motion to Strike Answer, for Summary Judgment, and for Judgment on the Pleadings" filed May 9, 1962 is dismissed.

The decree of Judge Chamberlain quieting title entered June 21, 1962 is reversed.

That portion of the judgment entered August 31, 1962, *nunc pro tunc* as of May 14, 1962, granting summary judgment and quieting title is affirmed. The Orders refusing to set aside said judgment are affirmed. In view of these affirmances, it is unnecessary to consider the other appeals, and they are dismissed.

Plaintiff will recover costs.

Draper, P. J., and Devine, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 28, 1965. Peters, J., Peek, J., and Mosk, J., were of the opinion that the petition should be granted.