[Civ. No. 29309. First Dist., Div. Two. Feb. 19, 1971.]

ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
WILLIAM SHEFFIELD, Real Party in Interest.

## COUNSEL

John F. Duff for Petitioner.

No appearance for Respondent.

William Sheffield, in pro. per., for Real Party in Interest.

## OPINION

**DAVID, J.**[*]—Petitioner, the Roman Catholic Archbishop of San Francisco ("Archbishop"), a corporation sole, is a defendant in an action brought by real party in interest, William Sheffield, for $260 damages. The Archbishop seeks mandate to compel respondent, the Alameda County Superior Court, to enter summary judgment in its favor, or prohibition to restrain further proceedings against it.

*Facts:* According to Sheffield, the following events led to filing of his complaint: In 1968, Sheffield, while traveling through Switzerland, visited the Hospice du Great St. Bernard, a monastery operated by the Canons Regular of St. Augustine, a Roman Catholic order. He entered into an agreement with Fr. Bernard Cretton, the monk in charge, to purchase a St. Bernard dog for $175, payable in $20 installments. The dog was to be shipped from Geneva to Sheffield's home in Los Angeles upon payment of the first installment. Sheffield agreed to pay the $125 freight charge from Geneva to Los Angeles. After returning to California, Sheffield paid two additional installments, making a total paid of $60, but did not receive the dog. He then wrote the monastery asking either for shipment or for refund of his money. The monastery replied that the dog would not be sent until Sheffield paid the entire purchase price plus additional "fees" to cover Fr. Cretton's trip to Geneva to deliver the dog to the airline. Sheffield

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

was also told that his $60 would not be refunded, as it had cost that much to "carry your account on the books."

Sheffield filed suit in San Francisco Municipal Court against "THE ROMAN CATHOLIC CHURCH d.b.a., THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, a corporation sole; THE BISHOP OF ROME, THE HOLY SEE, THE CANONS REGULAR OF ST. AUGUSTINE; AND FR. BERNARD CRETTON, and DOES I-X." The Archbishop's demurrer was sustained without leave to amend and the action was dismissed. The order was affirmed on appeal to the appellate department of the superior court. Although the record submitted by the parties does not show the reasons for the decision, Sheffield states that court determined that the municipal court had no jurisdiction because Sheffield was suing the Archbishop on an *"alter ego"* theory, which is equitable in nature. (*Castellini* v. *Municipal Court* (1970) 7 Cal.App.3d 174 [86 Cal.Rptr. 698].)

Sheffield then filed an identical complaint in the Superior Court of Alameda County. The complaint alleges that defendants Archbishop and the Canons Regular of St. Augustine were controlled and dominated by defendants Roman Catholic Church, the Bishop of Rome and the Holy See, that there exists a "unity of interest and ownership between all and each of the defendants," that the Archbishop and the Canons Regular were a "mere shell and naked framework which defendants Roman Catholic Church, The Bishop of Rome, and The Holy See, have used and do now use as a mere conduit for the conduit of their ideas, business, property, and affairs," and that all defendants are *"alter egos"* of each other. Sheffield prayed for $260 damages, consisting of $60 deposited with the monastery and $200 representing the additional amount he had to pay for a similar dog in California.

The Archbishop's motion to dismiss and motion for summary judgment were denied by respondent. In support of the motion for summary judgment, the Archbishop submitted an affidavit by Monsignor Donnell A. Walsh, attorney in fact for the Archbishop, Chancellor of the Archdiocese of San Francisco and a Doctor of Canon Law. Monsignor Walsh stated that the Archbishop "was not a party to said contract, had no knowledge of the alleged transaction, was not a participant and has no interest therein, and has had no business relationship or dealings, directly or indirectly" with Sheffield or the Canons Regular of St. Augustine. Monsignor Walsh further stated that the Archbishop was a "distinct legal entity" incorporated to "administer ecclesiastical property and temporal affairs in the Archdiocese of San Francisco" and that the Code of Canon Law is consistent with the California Corporations Code "in that the Archdiocese of San Francisco is recognized therein as an entirely separate and distinct juridical

entity which, under the Archbishop of San Francisco, has the dominion, ownership, possession and control of its assets as well as the responsibility to meet its own financial obligations." Monsignor Walsh also alleged that the Archbishop "never has been in the business, directly or indirectly, of raising and/or selling St. Bernard dogs in Switzerland or anywhere else; and no commercial or financial relationship or connection or interest whatsoever has ever existed between such corporation sole and said Seller [Canons Regular of St. Augustine]."

Sheffield submitted two counteraffidavits, one signed by himself and his wife, and one signed by Peter Shannon, who was described as a Licentiate in Canon Law from the Gregorian University in Rome, Notary and Pro-Synodal Judge of the Archdiocese of Chicago, past president of the Canon Law Society of America, and author of many articles on Canon Law. The Sheffields' affidavit merely recited the facts of the transaction with the monastery. Shannon declared that he agreed with Sheffield's argument that "the Roman Catholic Church, governed by the Pope through the Code of Canon Law, Roman Congregations, and other ecclesiastical organs, is but on [sic] worldwide entity; not a composite of 'entirely separate' entities as claimed by Msgr. Donnell Walsh in his affidavit. The Roman Catholic Church considers itself to be a hierarchial society, with spiritual and temporal headquarters in Rome. The Pope possesses supreme spiritual authority over all Catholics throughout the world, and, both in law and practice, exercises considerable temporal control over the persons and property of clerics, religious, dioceses, and religious congregations throughout the world."

We therefore turn to the issues:

1. *Is writ relief a proper remedy to compel a trial court to grant a motion for summary judgment?*

■ A writ of mandate is a proper remedy to compel a trial court to grant a motion for summary judgment where the affidavits in support of the moving party are sufficient to sustain a judgment in his favor, and his opponent does not by counteraffidavit show facts sufficient to present a triable issue of fact. (*Bank of America* v. *Superior Court* (1970) 4 Cal. App.3d 435, 441 [84 Cal.Rptr. 421]; *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 266-267 [83 Cal.Rptr. 237].) However, writ relief is to be used sparingly, with doubts resolved in favor of denial of review. "It may be assumed that the meritorious movant who has been denied his summary relief will ultimately prevail in the trial court without more trouble and expense than would have attended his efforts prior to the existence of the summary remedy." (*Whitney's at the Beach* v.

*Superior Court, supra,* at p. 266.) In determining whether summary judgment is warranted, the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed. (*Whitney's at the Beach* v. *Superior Court, supra,* at p. 267.)

### 2. *Did respondent abuse its discretion in denying summary judgment?*

Sheffield does not contend that the Archbishop was involved in the transaction between him and the monastery; his action against the Archbishop is based on the "*alter ego*" theory. ■ The terminology "*alter ego*" or "piercing the corporate veil" refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation. (*Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 579 [15 Cal.Rptr. 641, 364 P.2d 473].) ■ The requirements for applying the "*alter ego*" principle are thus stated: " ' "[I]t must be made to appear that the corporation is not only *influenced and governed* by that person [or other entity], but that there is such a *unity of interest and ownership* that the individuality, or separateness, of such person and corporation has ceased, and the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a *fraud or promote injustice*." ' " (*Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 837 [26 Cal.Rptr. 806], italics added; see also, *Minton* v. *Cavaney, supra; Minifie* v. *Rowley* (1921) 187 Cal. 481, 487 [202 P. 673].) Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other. (*Associated Vendors, Inc.* v. *Oakland Meat Co., supra,* at pp. 838-839.)

■ The Archbishop is a corporation sole under the California Corporations Code, section 10000 et seq., with the same civil rights and duties as other corporations. (*Archbishop* v. *Industrial Acc. Com.* (1924) 194 Cal. 660, 667 [230 P. 1].) Monsignor Walsh's declaration that the Archbishop has no business dealings or relationship with the Canons Regular of St. Augustine was not controverted in the counteraffidavits submitted on behalf of Sheffield. ■ The Shannon affidavit merely asserts that the Roman Catholic Church is a single entity controlled, spiritually and temporally, by the Pope in Rome. Sheffield also cites Canon Law to support his argument that both the Archbishop and the Canons Regular of St. Augustine are controlled by the Pope. But the issue is not whether the Pope or any other entity in Rome may be held liable for the actions of the Canons Regular

of St. Augustine, but whether the Archbishop may be held liable. The Shannon affidavit may have raised a triable issue of fact as to whether the Canons Regular of St. Augustine is an "*alter ego*" of the Pope, but it does not show that the Swiss organization is an "*alter ego*" of the Archbishop or vice versa. ■ Monsignor Walsh's uncontroverted declaration that the Archbishop had no dealings with the Canons Regular negates any possibility that the Archbishop so controlled and dominated that organization so as to be liable for its actions under the "*alter ego*" doctrine. ■ The "*alter ego*" theory makes a "parent" liable for the actions of a "subsidiary" which it controls, but it does not mean that where a "parent" controls several subsidiaries each subsidiary then becomes liable for the actions of all other subsidiaries. There is no *respondeat superior* between the subagents. ■ Denial of the motion for summary judgment was an abuse of discretion, and the writ should be granted.

Moreover, the second requirement for application of the *alter ego* theory—that failure to pierce the corporate veil would lead to an inequitable result—has not been met in this case. ■ Sheffield argues that 1) the Archbishop would not be injured by a judgment against it, as Canon Law allows the Archbishop to seek indemnity from the Canons Regular of St. Augustine, and 2) if he can't sue the Archbishop, he would have to discontinue his cause of action, as suing in Switzerland or Italy would be prohibitive. It is not sufficient that the plaintiff will not be able to collect if the corporate veil is not pierced. "In almost every instance where a plaintiff has attempted to invoke the doctrine he is an unsatisfied creditor. The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection, where some conduct amounting to bad faith makes it inequitable . . . for the equitable owner of a corporation to hide behind its corporate veil." (*Associated Vendors, Inc.* v. *Oakland Meat Co., supra,* 210 Cal.App.2d 825, at p. 842.)

■ The Archbishop also contends that respondent lacked jurisdiction because an indispensable party, the Canons Regular of St. Augustine, has not been served. (Code Civ. Proc., § 389.) This issue is fundamental, and is valid, even though first raised on appeal. (*Hartman Ranch Co. v. Associated Oil Co.* (1937) 10 Cal.2d 232, 265 [73 P.2d 1163]; *Holt* v. *College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, 761 [40 Cal.Rptr. 244, 394 P.2d 932].)

Let a peremptory writ issue, directing respondent superior court to enter judgment in favor of petitioner.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied March 19, 1971, and the petition of the real party in interest for a hearing by the Supreme Court was denied April 14, 1971.