Filed 10/23/24  Shalabi v. Perniciaro CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LUIS ALEXANDRO SHALABI, | |
| Plaintiff and Appellant, | E080771 |
| v. | (Super.Ct.No. CIVDS1314694) |
| JASON PERNICIARO, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Wilfred J. Schneider, Jr., Judge.  Reversed with directions.

Ortiz Law Group and Jesse Ortiz for Plaintiff and Appellant.

Lynberg & Watkins, S. Frank Harrell, Jesse K. Cox and Magen M. Startez for Respondent.

Plaintiff and appellant Luis Alexandro Shalabi (Plaintiff) sued defendant and respondent City of Fontana Police Officer Jason Perniciaro (Officer) for the loss of his relationship with his father, Muhanad Shalabi (Father), who died when shot by Officer.

1

(42 U.S.C. § 1983.) The trial court granted Officer's motion for summary judgment. Plaintiff asserts there are triable issues of fact. We reverse with directions.

## FACTS

### A.    FACTUAL ALLEGATIONS IN THE THIRD AMENDED COMPLAINT

Plaintiff alleged that, on May 14, 2011, as Father drove out of a trailer park, City of Fontana police officers conducted a traffic stop of Father and fatally shot Father in the back of his head.

### B.    MOTION FOR SUMMARY JUDGMENT

In his motion for summary judgment, Officer relied heavily on his own declaration when setting forth the facts of the case. Officer alleged that Father was driving a stolen vehicle. City of Fontana Police Officer Freeman stopped Father as Father was driving the stolen vehicle. Freeman parked behind Father's stolen vehicle. Officer joined the traffic stop, "position[ing] his marked patrol car at an approximately 45-degree angle near [Father's] front bumper, with the overhead emergency lights activated." Officer began opening his door to exit his vehicle, but before the door was fully open, Father drove his vehicle into Officer's car, which "pushed the patrol car into a parallel position with [Father's] vehicle."

Officer exited his car. Officer "believed [Father] was going to drive forward and run him over in an attempt to escape. [Citation.] In protection of his safety and the public's safety, Officer . . . drew his weapon and side-stepped to clear his vehicle. [¶] Officer . . . heard [Father's] tires screech and saw [Father's] vehicle again accelerate in

2

what he believed was his direction. [Citation.] Believing [Father's] criminal conduct was going to either injure or kill him or other innocent members of the public, Officer . . . fired four-to-five rounds at [Father]."

In moving for summary judgment, Officer argued that (1) Plaintiff could not establish Officer killed Father "with a 'purpose to harm' "; and (2) Officer had qualified immunity in killing Father because there was no case law informing Officer "that [Father] could not be shot for his life-threatening conduct."

C.     OPPOSITION

In opposing summary judgment, Plaintiff contended the evidence established that Officer shot Father from behind: Officer's bullets entered the back window of the vehicle Father was driving, and Father was shot in the back of his head. Plaintiff asserted Officer's "purpose to harm" Father could be established because Officer had no reason to fear Father at the time Officer shot Father. Plaintiff contended it was obvious that an officer should not use deadly force against a slowly fleeing driver who is accused of a property crime, so Officer was not protected by qualified immunity.

D.     RULING

The trial court found it was "undisputed that the shots commenced as [Father] 'begins to move his car' the second time in [Officer's] apparent direction." The trial court concluded, "[Officer] therefore had a legitimate reason, officer safety, to commence firing after . . . seeing the vehicle accelerate the second time toward him, this time while [Officer] was outside the patrol vehicle."

3

## DISCUSSION

### A.    STANDARD OF REVIEW

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers . . . .  [Citation.]  . . .  [W]e determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law."  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  "[W]e view the evidence in the light most favorable to [P]laintiff."  (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)

The "Golden Rule" of summary judgment used to be "if it is not set forth in the separate statement, *it does not exist*."  (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 [superseded by statute on other grounds].)  That rule has since been determined to be permissive, rather than mandatory, which means courts have discretion to consider evidence not referenced in the separate statement.  (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 315-316.)

At oral argument in this court, Officer expressed due process concerns if this court were to elect to not follow the "Golden Rule" of summary judgment.  In particular, Officer contended that he, as the party moving for summary judgment, had a right to know all of the evidence Plaintiff would rely upon in opposing Officer's motion.  The purpose of the "Golden Rule" is to ensure that the court and the party

4

opposing summary judgment have all the facts and evidence that the *moving party* intends to rely upon in seeking summary judgment. (*United Community Church v. Garcin*, *supra*, 231 Cal.App.3d at p. 337.) In other words, the rule is meant to protect the party opposing summary judgment—not the moving party. Nevertheless, we will constrain our review of this case as follows: If a fact is not in the moving party's separate statement or the opposing party's response to the separate statement, then it does not exist.

      B.     <u>SEPARATE STATEMENT OF MATERIAL FACTS AND THE RESPONSE</u>

In Officer's separate statement of material facts, he asserted that he saw "[Father's] vehicle again accelerate in what he believed was his direction." Plaintiff disputed that fact asserting, "[Father] did not accelerate towards [Officer]. At the time of this acceleration, [Officer's] vehicle was parallel to [Father's] vehicle. As such, as [Father] accelerated, he necessarily had to be moving away, not towards, [Officer]. This is further supported by the fact that the damage caused by [Officer's] discharge of his firearm were [*sic*] all to the rear of [Father's] vehicle. There was no damage to the front of the vehicle. [Officer] shot at [Father] because he believed that [Father] was going to get away."

In disputing another fact, Plaintiff contended, "Nor was there any damages to the driver's side of [Father's] vehicle or the passenger side of [Father's] vehicle. The only damage was cause[d] to the rear window and [an] exit defect to the center of the front

5

windshield[1]." Plaintiff asserted that "[Officer's] version of the events is contradicted by the physical evidence."

We turn to the evidence that supports Plaintiff's assertions. We rely on the evidence cited within Plaintiff's response to the separate statement. A photograph of Officer's patrol car shows a scuff mark on the left front bumper where it appears paint transferred onto the patrol car from Father bumping the patrol car out of his way. Photographs of Father's car show the rear window is missing. The only bullet hole visible on Father's vehicle is through the front windshield. The coroner's report reflects Father suffered a single gunshot wound that entered the back of his head and exited through the front of his head. In Officer's deposition, he said, "In that instance I fired several rounds at his vehicle. I noticed the vehicle slightly veers south and around my vehicle. I thought he was accelerating to get away."

In looking at the evidence in the light most favorable to Plaintiff, one could conclude that Officer was standing behind Father's car as Father drove forward, and Officer shot Father in the back of his head to prevent Father from fleeing.

C.    DEPRIVATION OF RIGHTS

We examine whether there is a triable issue of fact in Plaintiff's due process cause of action.

"Every person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by

---

**1** We infer Plaintiff is referring to the bullet hole in the windshield, which was created as Officer's bullet passed through Father and then the windshield.

the Constitution and laws, shall be liable to the party injured in an action at law." (42 U.S.C. § 1983.) Plaintiff had a constitutional due process interest in maintaining his familial relationship with Father. (*Ochoa v. City of Mesa* (9th Cir. 2022) 26 F.4th 1050, 1056 (*Ochoa*).) For a police shooting to rise to a due process violation, the shooting must " 'shock[] the conscience.' " (*Ibid.*)

"There are two tests used to decide whether [an] officer['s] conduct 'shocks the conscience.' Which test applies turns on whether the officer[] had time to deliberate [his] conduct. [¶] . . . [T]he deliberate-indifference test applies if the situation at issue 'evolve[d] in a time frame that permits the officer to deliberate before acting.' [Citation.] Deliberation is not possible if the officer[] 'encounter[ed] fast paced circumstances presenting competing public safety obligations.' " (*Ochoa*, *supra*, 26 F.4th at p. 1056; see also *Wilkinson v. Torres* (9th Cir. 2010) 610 F.3d 546, 554; see also *Gonzalez v. City of Anaheim* (9th Cir. 2014) 747 F.3d 789, 797-798.)

"[T]he purpose-to-harm test applies if the situation at issue 'escalate[d] so quickly that the officer [had to] make a snap judgment.' [Citation.] This test requires 'a more demanding showing that [the officer] acted with a *purpose to harm* [the decedent] for reasons unrelated to legitimate law enforcement objectives.' [Citation.] Legitimate objectives can include 'arrest, self-protection, and protection of the public.' [Citation.] Illegitimate objectives include . . . us[ing] force against a clearly harmless or subdued suspect.' " ' " (*Ochoa*, *supra*, 26 F.4th at p. 1056.)

Plaintiff contends there is a triable issue of fact as to whether Officer's killing of Father "shocks the conscience," such that it would rise to a due process violation.

Plaintiff advocates in favor of applying the "deliberate indifference" standard. Officer contends the "purpose to harm" standard applies in this case because he argued in favor of that standard in his motion for summary judgment, and Plaintiff failed to argue for the "deliberate indifference" standard in the lower court, thus forfeiting the argument. For the sake of judicial efficiency, we will apply the "purpose to harm" standard. We examine the evidence in the light most favorable to Plaintiff. (*Wiener* v. *Southcoast Childcare Centers, Inc.*, *supra*, 32 Cal.4th at p. 1142.)

"The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." (*Tennessee v. Garner* (1985) 471 U.S. 1, 11.)

"In California, the police may use deadly force to arrest only if the crime for which the arrest is sought was 'a forcible and atrocious one which threatens death or serious bodily harm,' or there is a substantial risk that the person whose arrest is sought will cause death or serious bodily harm if apprehension is delayed." (*Tennessee v. Garner*, *supra*, 471 U.S. at p. 16, fn. 15; see also Pen. Code, §§ 196, 835a.)

"[F]ew things in our case law are as clearly established as the principle that an officer may not 'seize an unarmed, nondangerous suspect by shooting him dead' in the absence of 'probable cause to believe that the [fleeing] suspect poses a threat of serious physical harm, either to the officer or to others.' " (*Torres v. City of Madera* (9th Cir. 2011) 648 F.3d 1119, 1128.)

According to Officer, a GPS tracking device had been installed on Father's vehicle. Thus, if Father had successfully fled the traffic stop, law enforcement could have tracked him without a high-speed pursuit endangering the public. Officer was standing behind Father's vehicle, so Officer was not in danger of being harmed as Father drove forward around Officer's patrol car. One can infer that no officers or bystanders were in the immediate path of Father's vehicle because Officer would not have fired his gun in the direction of the vehicle if innocent bystanders were in the bullets' paths.[2] Accordingly, no one was in immediate danger of being harmed by Father's vehicle. Further, Father was not suspected of having committed a violent crime.

In sum, a trier of fact could find there was no risk of harm to the general public, to any bystanders, to Officer, or to other law enforcement officers if Father succeeded in driving away. From that finding, a trier of fact could conclude there was no legitimate purpose for shooting Father because he was harmless. (*Ochoa*, *supra*, 26 F.4th at p.

---

[2] It appears from the photographs that one of Officer's bullets went through the window of a house.

9

1056 [ " ' " 'Illegitimate objectives include . . . us[ing] force against a clearly harmless or subdued suspect' " ' "].)

As for the purpose to harm, in some cases, that will be established by "evidence of ulterior motive or bad intent separate and apart from evidence of an unreasonable use of force." (*S.R. Nehad v. Browder* (2019 9th Cir.) 929 F.3d 1125, 1140.) However, in other cases, "a use of force might be so grossly and unreasonably excessive that it alone could evidence a subjective purpose to harm." (*Ibid.*) "[F]or example, [when] there was evidence that two officers shot a fleeing suspect in the back," no separate evidence of bad intent was needed to show a triable issue of fact on a purpose to harm. (*Id.* at pp. 1139-1140) In the instant case, a trier of fact could conclude that Officer shot Father in the back of his head as Father, who posed no risk of harm, attempted to flee. That use of deadly force could be found to be so grossly and unreasonably excessive that it would support a finding that Officer acted with a purpose to harm.

In sum, there is a triable issue of fact concerning whether Officer acted with a purpose to harm Father for reasons unrelated to legitimate law enforcement objectives.

D.     QUALIFIED IMMUNITY

Plaintiff contends there is a triable issue of material fact as to whether Officer's killing of Father is protected by qualified immunity. In particular, Plaintiff contends that, at the time Officer killed Father, the law clearly established that an officer could not use lethal force against a suspect who posed no threat of serious physical harm.

"[T]he qualified-immunity analysis asks whether the [constitutional] right in question was 'clearly established' at the time of the violation. [Citation.]

Governmental actors are 'shielded from liability for civil damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." ' [Citation.] '[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' " (*Tolan v. Cotton* (2014) 572 U.S. 650, 656.)

" '[W]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity.' " (*S.R. Nehad v. Browder*, *supra*, 929 F.3d at p. 1140.) Under Officer's version of the events, Father was driving toward Officer at the time of the shooting. Under Plaintiff's version of the events, Father was driving away from Officer at the time he was killed. This disputed material fact is critical to the qualified immunity analysis because one has to know whether Father posed a risk of harm before deciding the issue of qualified immunity. Therefore, summary judgment cannot be granted on the issue of qualified immunity.

Further, when we look at the facts in the light most favorable to Plaintiff, qualified immunity would not apply in this case. (*Liston v. County of Riverside* (9th Cir. 1997) 120 F.3d 965, 977 ["For the purposes of summary judgment, even in a qualified immunity case, we must assume the nonmoving party's version of the facts to be correct"].)

In 1985, the United States Supreme Court wrote: "In California, the police may use deadly force to arrest only if the crime for which the arrest is sought was 'a forcible and atrocious one which threatens death or serious bodily harm,' or there is a substantial

11

risk that the person whose arrest is sought will cause death or serious bodily harm if apprehension is delayed." (*Tennessee v. Garner*, *supra*, 471 U.S. at p. 16, fn. 15; see also Pen. Code, §§ 196, 835a.)

*Tennessee v. Garner* was published decades prior to the shooting in the instant case. Therefore, at the time Officer killed Father, the law was clear that deadly force cannot be used against a person suspected of a non-violent offense who poses no risk of harm to others. As a result, qualified immunity would not apply under Plaintiff's version of the facts.

Officer contends that there was no case factually on-point with the instant case prior to Officer killing Father so as to demonstrate that a reasonable person at the time of the killing would have known the killing was unconstitutional. Therefore, Officer contends qualified immunity must apply.

Factually analogous case law is necessary when the facts surrounding the killing fall "in the ' "hazy border between excessive and acceptable force." ' " (*Brosseau v. Haugen* (2004) 543 U.S. 194, 201.) However, when the law sets a clear standard, then the qualified immunity analysis can be conducted "without a body of relevant case law." (*Id.* at p. 199; see also *Hope v. Pelzer* 536 U.S. 730, 741 [when "the law is clearly established," case summaries are not necessary in a qualified immunity analysis].) Given that a trier of fact could find that Officer killed Father to prevent Father from fleeing when Father posed no threat of harm, there is no room for debate as to whether that would qualify as an acceptable level of force. Accordingly, there is no need for

case summaries to indicate that a reasonable person would have known the killing was unconstitutional. (*Torres v. City of Madera*, *supra*, 648 F.3d at pp. 1128-1129.)

Officer submitted supplemental authorities to support his position that a factually similar case is necessary for a qualified immunity analysis. One of the cases on Officer's list of supplemental authorities is *Cuevas v. City of Tulare* (9th Cir. 2024) 107 F.4th 894, 901, in which the court wrote, "And while our court has found an obvious constitutional violation in an excessive-force case, it did so only where officers killed a man who posed 'no immediate threat.' *Est. of Aguirre v. County of Riverside,* 29 F.4th 624, 626–27, 629 (9th Cir. 2022). As we have already explained, the officer in *Estate of Aguirre* obviously violated the Constitution when he 'shot and killed a suspect holding a baseball bat because the suspect was not facing the officer, was holding the bat pointed downwards, and was not threatening anyone else when he was shot.' [Citation]." In sum, the additional case provided by Officer supports the conclusion that when the suspect posed no risk of harm, then it is obvious that the use of deadly force is unconstitutional.

E.    REMAINING ISSUES

Plaintiff contends the trial court erred by considering this second motion for summary judgment from Officer, after having denied Officer's first motion for summary judgment. We need not address this procedural issue, as we have concluded this motion for summary judgment fails on the merits.

13

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order granting the motion for summary judgment and enter a new order denying the motion.  Appellant is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

FIELDS
J.

MENETREZ
J.

14